We have four argued cases this morning. The first is number 18-2171, Sanchez v. DVA, Ms. Mercado. Good morning, may it please the court. Attorney Margarita Mercado on behalf of petitioner Jose M. Sanchez. I would like to structure my argument by addressing our two main contentions and appeals. First, our challenge to the manner in which the judge before the Marriage System Protection Board closed the record, despite the fact that discovery had been undertaken with permission and authorization of the judge and to her knowledge about the depositions and documentary evidence that the agency had produced to petitioner. The record was closed and no opportunity was given to petitioner to file the discovery that had been uncovered for the record or to argue his case in light of the discovery. Secondly, I would argue the merits of the final decision by the board, which held that the agency did not breach the settlement agreement that had been executed between the parties by which essential terms and conditions of petitioner's tour of duty with the agency as a petitioner were set. Do you dispute the general proposition that a term like this would expire after a reasonable time? Yes, we dispute it firstly because it was not argued in the agency response that there was a reasonable amount of time of compliance with the settlement agreement. Therefore, when the judge issued the decision on the basis of reasonable compliance, it was a matter that was not placed before in the pleadings. Okay, but that wasn't my question. My question is do you agree that in a contract of this sort, this kind of term about his work hours and his compensation for commuting would expire after a reasonable time? Given the text of the settlement agreement that is found in Appendix 48, I would dispute that it was subject to a reasonable amount of time. So, in your view, it continues forever, for life, as long as he works? As long as what the parties agreed in Section 2 of the settlement agreement is that he would have the compressed work schedule while working at the Ponce Outpatient Clinic. That was, while he was maintaining that position, if he was moved to the San Juan facility, the main facility, which was where he was working in 2001 when he was transferred due to the agreement, then that would be a different arrangement because he would be in San Juan. But the agreement clearly subjected his tour of duty and his compressed work schedule to the fact that he would be in Ponce. So, there was a clear term of duration while he was there. He's still working in the Ponce Outpatient Clinic. He still lives in San Juan, some 70 road miles away from Ponce. So, the conditions of the settlement agreement and the terms and conditions are still present and should be honored, and it is not subject to reasonable amount of time. Let me see if I understand your argument. Your argument then sounds like in a contract where no specific time is set out for it to terminate, you look at the reason for the changing the building that they were working in, which was obviously something that could be done in a short period of time. A reasonable time would be implied, but you're suggesting that in a contract such as this, a settlement agreement such as this, as long as he is at Ponce, if I remember right, then they are obligated to honor the terms of that settlement agreement. Is that your argument? Correct. That was what was agreed and specifically stated in the text of the agreement. So, it wasn't only the intention. Wait, what page is the text of the agreement at? It's at Appendix 48, and it's Section 1 and 2. 48? 48. Section 2, which is related to Section 1. There is nothing in that agreement that I could find that set a time one way or the other. Is that right? In terms, if your Honor is asking about years or months, that wasn't stated, but that wasn't the nature or the purpose of the agreement. The purpose was that while he would be transferred to Ponce, he would have this work schedule in consideration that he was transferred as an agreement because he filed an action for reprisal due to whistleblower activity that he had engaged in. And they agreed that he would no longer work in San Juan where he was stationed for years, and he would now work in an outpatient clinic in Ponce. Since the agreement was reached due to his protected activity and he was still living in San Juan, that was an essential term or condition of this agreement. And it was stated in the text in Section 2. The idea was he didn't have to move his home to Ponce. Correct. He could drive the three hours back and forth? Yes, that was the agreement, and it's specifically stated in Section 2. So I agree with your Honors that there isn't a traditional term saying this would last 15 years, 5 days, or 10 months. But it was tied, the duration was tied intrinsically to the fact that he would be in Ponce. I'm sorry to interrupt you, but I understand your position. Is there any relationship at all between the whistleblowing activity and this settlement agreements, you know, the part where he's going to be transferred to the remote location? Is there any relationship? His whistleblower activity created an environment that didn't conduce itself for him to still work in San Juan. So part of the agreement was that he would move to a facility in Ponce to work outside the environment where he made his whistleblower claims and were investigated, and he suffered reprisals due, or that was his claim in the prior board proceedings, that he suffered reprisals due to his protected activity. So yes, the essential term was that he would be moved to Ponce so that he could still work in the agency because he couldn't work in the environment in San Juan. And then the travel time and the compressed work schedule was agreed upon so that he could move to Ponce. Is there anything in the record below at all, maybe submitted by the government, about how the environment in San Juan was no longer problematic for him? In the first pages of the appendix, I have it here, but it's the first pages of the appendix. It's the documents of the prior board proceeding and the agency's response, his prior grievance with the board, and letters exchanged between him and his supervisor way back in 1999 and 2000, that was the basis for the prior proceedings. So there, the court could find the context of how that prior procedure developed, yes. So the retaliation was by his then-supervisor? He made a whistleblower claim that wasn't proper. Answer my question. Was the alleged retaliation by his then-supervisor? Supervisors, and there was a hostile work environment with residents in the San Juan facility that weren't respectful to him, and that led for him to, he made a claim regarding residents' behaviors under his supervision, and that his claim in the prior board proceeding, that all those claims that he made requesting investigations regarding supervisors and residents in the San Juan hospital. Does the record show anything about whether those people are still in San Juan? No, the record doesn't show. I wouldn't venture to give you names of the same persons that could be there. Do we know? But the agency has never offered for him to transfer to San Juan because he was, his schedule was just changed without consulting him, and the record does show that. That in 2017, the agency unilaterally notified him that he had to work, that the schedule was no longer in place, and no interim accommodations were discussed with him to maybe explore the possibility of him now, years later, moving to San Juan. And that is part of our argument of the unreasonable and arbitrary manner in which the agency changed his tour of duty in breach of what had been agreed upon in 2001. So you wouldn't suggest that there's anything improper about them moving him back to San Juan? That wouldn't be a violation of the agreement? In the, if the parties would have to voluntarily agree, maybe a settlement along those lines. No, no, no, no. But... So if they did it unilaterally, moved him back to San Juan, would that be a violation of the agreement? It wouldn't be a violation of the agreement because the agreement stated that while in Ponce, that he would have the compressed work schedule in attention to the fact that he would be traveling. It would not be a violation of the agreement? It wouldn't be a violation of the agreement. It would or would not? It wouldn't. It would. It wouldn't. Yes. But my contention is that... Let me ask you a question. In the July 24, 2017 letter from the Department of Veterans Affairs to Dr. Sanchez, it says, in an effort to ensure that all VA resources are appropriately maximized and our veterans are afforded availability of services, we have determined that we're canceling the settlement agreement or we're changing it the way we want it. Do you have any explanation as to what actually... Those statements are meaningless. Do you have any explanation or do you know why this suddenly happened? When it happened in July 2017, my petitioner had not been given any explanation as to whether his performance, his work schedule had affected patient services or whether additional services were suddenly needed. That was part of the evidence that was confirmed during discovery, but as the record shows, the petitioner was not advised of any issues regarding patient access to services, et cetera. So it really blindsided him. But why is that relevant? Why is that relevant? If, in fact, we were to say, yes, the agreement could be terminated in a reasonable period of time and that 16 years was a reasonable period of time, what difference does it make whether the claim of efficiency or need for additional work hours was correct or not? I mean, the term just expires because a reasonable period of time is over with and it doesn't make any difference why the VA has decided to do it this way. Because the reasonable analysis needs to look at the attendant circumstances. And if they were not looked upon, the harm... Wait, wait. What case says that? Even the same, it was cited in the same decision. The judge even stated that evaluating all of the attendant circumstances, and it cited the case of Parkman v. U.S. That's a board decision. A board decision, yes. So the board has law that says that where a settlement agreement is silent as the time or duration, you can have a reasonable time under the circumstances is presumed. That's the law you're relying on? That's the law cited by the judge. But what law are you relying on? I'm relying on the basic tenant that when the agreement is clear as to its purpose and duration. And in this case, it is clear that the duration is tied to his tenure in the bone cell patient clinic. The fact that he has been providing diligent services for 16 plus years is irrelevant. Because the parties agreed that while he remained in Ponce, he would have this schedule. If he was notified that he would now work in San Juan, where he lives, then the three-hour travel time and the compressed work schedule did not have their purpose. What were you looking for in your discovery effort? What did you think you would turn up in discovery that would help decide this case? As your honors should have seen in the response by the agency, they didn't argue reasonableness of the compliance for 16 years. They relied on similar arguments as your honor read from the letter terminating the agreement. They relied on allegations of services and need of additional services. What were you looking for? I think the question is, what were you hoping to get from the discovery? We were hoping to get corroboration information as to whether that was a valid or real reason and not something masking discrimination or other improper means. And during discovery, we uncovered that evidence contrary to their claims that additional services were needed. Did you find any evidence, just evidence that undermined the government's contention that he wasn't able to perform the services? Productivity rates were not considered when their agreement was terminated. And we found evidence corroborating that his productivity rates were up to par and that no analysis was made by the agency regarding productivity in Ponce when they decided to overturn the agreement on the basis of a need of additional services. We did find evidence to refute that. Did the administrative judge consider or discuss your claim that the time period should be tied to his location in Ponce? The judge did not rule upon that or give considered analysis as to the agreement. As to that specific argument. Your argument is that you agree with the board's law, that is, that it's not an unlimited amount of time, but you're saying it is a time that is limited to the time that he's located in that place. The time was set in the agreement tied to his tenure in Ponce. He has been in Ponce for 16 years. If he's kept in Ponce, the agreement stands regarding his compressed work schedule. But you're also saying that they can't transfer him to San Juan, right? Yeah. It wouldn't be a violation of Section 1. It would not be. Wait, wait, wait. Don't interrupt. You've given two different answers to this question several times. If they transferred him to San Juan, was that permissible under the settlement agreement? Yes. You're assuming, assume for the purpose of that question, that he objects to going. But they say, you've got to go back to San Juan. Question. It may be. Would that be a violation of the agreement? Of Section 1 and 2, it would not be. And that was my original answer. Maybe I misspoke or you didn't understand. But it wouldn't be a violation of Section 1 or 2 of the agreement. It could be a separate employment violation in the manner that the agency would do it. But this is speculative. But Section 1 and 2 of the agreement state that he would be reassigned to Ponce. And while in Ponce, he would have the compressed work schedule. And that's the claim that is before this court. And I respectfully posit that the agreement is clear as to the fact that he had to be maintaining that compressed work schedule when in Ponce. So that it couldn't be overturned. So your argument is as long as he's at Ponce in accordance with the agreement, they have to give him this work schedule. Yes. But if they transferred him back to San Juan, then that might be a different problem. It could be a separate employment violation, but not Section 1 and 2 of the agreement. Why a separate employment violation? Because it's speculative. It didn't happen. But it depends on the reasons why he would be transferred to San Juan. So I would have to see the reasons why he would be transferred. But it wouldn't be the violation of Section 1 and 2 tying his compressed work schedule to his presence in Ponce. So if they did it because they needed his work in San Juan, they could transfer him back to San Juan and not give him the compressed work schedule. Well, that would mean we would have to analyze the reasons why he would be transferred to Ponce. I gave you the reason. They needed his services in San Juan. It could be a violation of Section 1, but not of Section 2. Section 1 is the transfer to Ponce, but Section 2 is the compressed work schedule. So in San Juan, the compressed work schedule wouldn't be in place. It wouldn't have importance. So now you're saying if they transferred him back to San Juan, it would be a violation of Section 1? It could be, depending on the reasons why. What do you mean, depending on the reasons why? Because we would have to analyze whether the environment that led him to the settlement agreement was still in place in San Juan. And it would be part of a settlement with the agency that it could be possible. So your argument, if I understand it, is that it's possible that he could be transferred back to San Juan if they had a good reason for it, and that transfer would be consistent with his circumstances working there. And if that were true, if it was an okay transfer, then the compressed schedule would no longer be applicable. Yes, it wouldn't be applicable under Section 2, yes. Can I talk to you a little bit about the discovery issue? So I understand that the administrative judge didn't give a date certain on which discovery would end. However, in March and at other times, she asked the parties to identify if they were going to be continuing to need discovery. She then in April sent another letter asking for identification of whether anyone would need more time for discovery. And there was no response at all. I mean, why is that not reasonable for her to assume, given her practice of sending letters and saying, you need to keep me informed, she let the parties know that she'd make a decision within so much time. Why wasn't that? She was allowing the discovery, she was, instead of giving a date certain, she kept on moving the date so that you could take your discovery. And when she then asked again to know whether further discovery was required before the end of April, there was no response. Why isn't what she did reasonable? Because she didn't take into consideration that the delays in the discovery weren't imputable to petitioner. The court confined close to six motions in the appendix from pages 205 to 241, where petitioner was the one advising the judge that the agency had not complied with discovery, was requesting additional time to produce evidence. So it doesn't matter that there was no response to her inquiry in April? She didn't take into consideration that it was the agency who did not produce, particularly the witness that was going to be deposed in April. And she didn't take into consideration that it was the, that discovery was in the record, was uncovered during proceedings, and she didn't allow petitioner to use that discovery, even the one that had been uncovered prior. Is there something that prohibited you from providing that information to the court earlier in time? The information that you already gathered from discovery? Yes, the board rules don't allow parties to file evidence for the record while discovery is pending. What the procedures provide for is that discovery would be used for the party to present its case. So when discovery is concluded, then the party, under board rules, should have an opportunity to file it for the record in a final pleading, or to move the court under even the provisions for enforcement of settlement agreements, to move the court for the reasons why she should exercise discretion for a hearing. But here, the record was closed. No date for discovery was set. No date for closing the record was set. And no advisement was issued to the parties that the record could close and that the case would be submitted on the, without any further filings from the parties. And the purpose of discovery that was allowed under the rules, under Section 1201, 71, and 72, is that the parties engage in discovery to present their case. So it would be, it would be, if you don't have the ability to file a final pleading with the evidence uncovered during discovery, then the discovery had no reason. It was granted, but... But sometimes the discovery doesn't provide relevant information. But she didn't allow the parties to express themselves as to whether a final pleading was necessary, or a hearing, and these proceedings for enforcement do allow for a hearing. But what of the fact that she asked, you know, her April letter was not responded to? I mean, does that, you think that given, what about that? Do you think that she should have given the parties an opportunity afterwards when there was an explanation that the government hadn't yet provided the discovery request? Correct. Because we weren't advised that the record would close, including the agency acted under the assumption below, during discovery, that the May was, that discovery had not ended. In fact, I asked for dates during April for the final deposition, and the agency did not provide those, and provided a date in late May for, to produce the witness for deposition. So the agency below acted under the understanding that discovery had not been closed, that the notice, it is a notice, it is in an order.  The agency below acted under the assumption that discovery could be conducted in May. Now they argue that it was clear that it couldn't, or they suggest that. But below, the agency protracted producing the agency, the witness, and only produced the witness in May, late May. So both parties were under the assumption that discovery has not been closed in a fixed date. Okay, I think we're out of time. We're over it. We'll give you two minutes for rebuttals. Ms. Thomas? Thank you, Your Honor, and may it please the Court. I'll begin by going back to a question that Judge Plager asked a while ago, which was, is there anything in the record that indicates why the agency altered Dr. Sanchez's schedule at the time that it did? And yes, there is. That's in the declaration that the agency filed in response to the Petition for Enforcement, which is at page, Appendix 122 and 123. It's on the second page of the declaration. And the declarant, who was Dr. Suarez, the head of the- The head of the declarant is the gentleman who they were seeking the deposition of and they weren't able to get? That's right, Your Honor. The agency, during written discovery, identified two individuals who made the decision to change Dr. Sanchez's schedule, Dr. Miranda and Dr. Suarez. Dr. Miranda was deposed. Dr. Suarez, the deposition was in the process of being scheduled. Was either of them charged with being the source of the retaliation that led to the whistleblower complaint? No, Your Honor. Dr. Suarez said in the declaration that they had two urologists operating in the entire VA health system in Puerto Rico outside of San Juan, one in Mayaguez and Dr. Sanchez in Ponce, and that about a year or two prior to the change to Dr. Sanchez's schedule, one of those two urologists had stopped seeing patients and that they had been unable to fill that position since that time. So at the time that the change was made to the schedule, the agency had been down to one urologist outside of San Juan for quite some time and for that reason they determined there was an acute need to increase the availability of services to veterans outside of the San Juan area. So the argument is that the government had a problem and their solution to the problem was to abrogate the settlement agreement that they had made 16 years earlier. Is that what we're to understand? I, of course, wouldn't frame it that way, Your Honor. Those are the facts, right? No, Your Honor, because whether it's an abrogation of the settlement agreement sort of assumes the nature of the legal standard that's being applied under the standards that the board had established and that have been in place for more than 25 years. When the agency performs for a reasonable period of time when the duration is not set within the settlement agreement, it has fully performed as long as it performs for a reasonable period. It's not abrogating the agreement by performing for a reasonable period and then, you know, ceasing to perform. But it's unilaterally determining what is a reasonable period. Well, the board determines what's a reasonable period. The agency takes the risk that if the action is challenged that the board may disagree with the agency's action. And this court may disagree with the board. Of course. This court has not ever blessed in a precedential opinion that approach of the board, right? Of looking at whether there's been a reasonable amount of time. It has not, Your Honor, although two things with respect to that. In a decision issued in the early 90s, which was quite some time ago, cited by the board called Bogula, this court did address the situation. That was dicta, wasn't it? I've read that. It was dicta. It's totally dicta. It is. But the reasoning still stands. The second thing is that the petitioner really hasn't challenged the board precedent. He hasn't relied upon any authorities for the proposition that this precedent is wrong or that it should be overturned. He really just disagrees with the notion that the agreement doesn't provide a duration. What's your response to their position that it's true, it doesn't provide a duration, but because the time period should be tied to the location where he's stationed because he lives far away from that location. And so that's the argument I hear, is they're saying it's not reasonable because there's a tie between the location and the time period. So long as he's at the location, that's the time period. What's your response to that specific argument? The response to that is that if that was the arrangement that the petitioner wanted in 2001, that's the one that should have been put into the settlement agreement. What more should have been put in that's not there? If the petitioner wanted to make his presence in the Ponce Clinic conditional upon his always having the reduced schedule there, then the agreement should have said something along the lines of the petitioner's schedule shall not be altered from this reduced schedule during his time at the Ponce Clinic. Well, let's look at the settlement agreement. Sure. Paragraph 1. The agency and the appellant mutually agree that the appellant will be reassigned to the Ponce Outpatient Clinic, effective not later than 2001. The appellant's pay will not be reduced. No conditions or no, unless we decide otherwise, there's no, the government did not reserve any right to cancel that. It just said you're going to be reassigned. Paragraph 2 says the appellant will have a compressed work schedule at the POP, which is the Ponce Clinic, of 10 hours per day for four days per week, which will include three hours of travel per day, very clearly tied to the distance problem. And no question about that, is there? I don't believe so, Your Honor, but it's not clearly tied at all to a duration or to a condition of being present in the clinic. And the reason that the government was not requiring... What more would you want to say to make it clear that the transfer to Ponce is related to the compressed work schedule? I'm not suggesting that there needs to be, it needs to be clear that there was at the outset a relationship between the two. But what I am suggesting was that if the parties wanted to make it so that forever after, while he was at Ponce, he would maintain the same schedule, that that relationship had to stay the same forever, that needed to be stated in the agreement. It could have been the case that at the outset it would have made sense for him to have a reduced schedule to account for travel time while he made arrangements to move closer to Ponce. It could have, in which case it would have said something to that effect, wouldn't it? Well, that's sort of just the reverse of the argument of the other side. You do agree, whether your precedent is binding or anything, you do agree that in deciding what is reasonable time, we need to look at the entire context in which this settlement agreement was made and the extent to which it should continue under the circumstances. Isn't that part of what your precedent tells us to do? Well, it's what they tell the board to do, and of course this court reviews the board's determination on that point. Right, that's what the board should do. There was no evidence, other than the contents of the agreement itself, there was no evidence in the record before the board concerning the circumstances surrounding the agreement and the purposes of the parties in putting together. But isn't it very unusual that some federal employee would be paid for commuting time? It is exceptionally unusual, yes. Are there any other instances that you're aware of where employees are paid for commuting time? Not me personally, but of course I haven't looked into that question. I have a question for you. I want to know, is this a determination of whether 16 years is a reasonable period of time under the circumstances? Yes. Is that a question of law or fact? That's a question, I would say, of fact. When you say, I would say, like that, do you have support, legal support for that? Of whether, yes, I believe that when this court reviewed, so for example, in a non-presidential decision, McGee, when this court reviewed the board's determination of what was reasonable, it reviewed it for substantial evidence. Do you have anything else? I'm sorry, did you say substantial evidence on what is reasonable? As a question of fact, yes. Well, if the board cites legal principles, of course, then that would be a question of law. Isn't it arbitrary or capricious? It's a judgment by the board as to what is reasonable? Is that a fact? That would be an issue of judgment, I would call it. It's not clearly law or fact. I'm glad you agree on that. But the other issue is that the board president, starting in 1992, was quite clear on the point that if there was no clear statement of duration of performance in an agreement, then that meant that the board would infer a reasonable time. That precedent had been established for nearly 10 years at the time this agreement was put together. And it's been established for much longer than that since then. If this court were to rule that suddenly that rule is not in place, that the parties have a responsibility instead to do the opposite, that if they don't want the duration to be indefinite or for the entire length of time contemplated but not written down by the parties in the agreement, that would overturn quite a lot of settled expectations. Well, we really don't have to go that route because the real question is whether it was reasonable for the government to unilaterally change the terms of his settlement agreement. There's no question that they're changing the terms of the settlement agreement, is there? Well, there is, Your Honor, because again, that sort of assumes the legal stance of the standard. It assumes that- Your argument is the settlement agreement incorporates a reasonable time provision. Yes, Your Honor, and so that they have satisfied the agreement and therefore are not changing it. The question I'm asking is if it incorporates a reasonable time, then the question is whether, under these circumstances, this was a reasonable time given the context in which this settlement agreement was made. Certainly. Is that fair? I mean, context is certainly one of the factors that the board can consider. Yes, it's supposed to consider- Would it also be fair to say that that's not a unilateral decision that the government could make willy-nilly? There has to be some good reason for them to make it. You're familiar with illusory contracts, that is to say, if the government went into this thinking it could change its mind any time, wouldn't we think that's an illusory contract? If it went into it with that intention, but, I mean, the fact that the government has performed for 16 years suggests that it did not have that state of mind. I mean, that sounds like- It's not illusory if they're performing for a reasonable period of time. Right, exactly. If this is reasonable. Of course, Your Honor, that's really the test. I wonder whether there's an issue with respect to the reasonableness of the period of time that hasn't been addressed. I mean, it sounds to me as though the assignment to Ponce and this deal that he got about being paid for the commuting time was based on the fact that if he stayed in San Juan, he would suffer potential retaliation from supervisors and other people in the San Juan facility. And perhaps the question is whether a 16-year period is a long enough period for that risk to have been dissipated. For example, that the supervisors who were there at the time and who might retaliate against him were no longer at the San Juan facility. I mean, isn't that sort of a relevant consideration here as to whether the reasons that gave rise to the transfer have been dissipated over the last 16 years? That might go to the... Well, first of all, Your Honor, discussing the supposed hostile work environment in San Juan and that as the assertive basis for the move to Ponce, there's no evidence for that in the record as far as I'm aware. That's simply a sort of after-the-fact argument. What does the record show about the reasons that he was transferred to Ponce under the agreement? I'm not aware that there is evidence in the record on that point. Well, then maybe we need to know what the reasons behind the transfer were in order to make a determination of what's a reasonable period of time. Well, it's the petitioner's obligation, of course, to raise to the Board any considerations that he thought might be relevant to the inquiry. So if it's not in the record, that would be the result of the petitioner's failure to put it in the record, which goes to the... Do you agree with Ms. Mercado? I think that's her name, isn't it? You do agree with her that if instead of just saying, stay in Ponce but work more than you've been working, they had said, it's time to come back to San Juan, that that might have dissipated any need for this special compressed work pattern, but it might have raised another question as to whether ordering him to go back to San Juan, as Judge Dyke was just suggesting, would be inappropriate given the context in which he was sent off to Ponce. Certainly that could be a relevant consideration that could be raised by the petitioner in those circumstances as something to be considered by the board. But the fact remains, and I think it's really difficult to argue that the petitioner, as he asserts here, didn't have the opportunity to complete discovery or to add additional materials to the record, but in this matter, given... You say it is difficult to argue, or it's not? It is difficult to argue, because... It's not difficult at all. She just announced that the case was closed. Here's the answer. She gave no warning to anybody. Your Honor, on March 1st, the judge issued an order that said I have to decide this case in 120 days. This is day 92. The only way that I'm inclined to allow the petitioner to have additional discovery is if I suspend case processing in this matter for 30 days. And during that time, the parties should be completing discovery, they should be formulating any additional materials they want to put into the record, and after that, we can resume processing. Then... I'm sure I don't need to remind you that part of the time period was taken up by a hurricane. And in fact, the judge ordered the case stopped. Am I correct about that? Not exactly, Your Honor. So the 121 days started from the date it was refiled after the hurricane. So the case was then suspended for 30 days and resumed on about day 97, which was in early April, which meant if you could do the math, that by the end of April, the judge had to decide the decision, or decide the case. And the judge at that point issued the order saying, if you need more time past April, you've got to let me know. From all of those factors, it's pretty evident that the petitioner should have been on notice that if he wanted to continue past that date, he needed to let the administrative judge know. And she didn't. No, the petitioner did not let the administrative judge know. And the petitioner in his motion for reconsideration didn't assert that it was the administrative judge's fault because there had been no deadline. He said it had been a mistake on his part. That's all. Unless the court has further questions, we respectfully request that the decision be affirmed. Thank you. Thank you, Ms. Thomas. Ms. Mercado, you have two minutes. I would first address the questions about the context of the procedure by which the Seroma Agreement was reached. In pages 1 through 47 of the... Those are the documents referencing the initial procedure in 2001 before the board that gives the court context of what happened that led to the Settlement Agreement. And this is part of our... The record shows that the reason and the procedure followed by the agency to overturn the Settlement Agreement was unreasonable. They didn't take into consideration the Settlement Agreement and the procedure by which it was reached with the agency. In fact, in their response, they even denied having knowledge of the whistleblower claim that was clearly in the record before the agency. They didn't have the Settlement Agreement on file for petitioners. So when they revoked his compressed work schedule, there is no question that no analysis was made about the Settlement Agreement, the agency's responsibilities under the agreement. No analysis was made by the agency regarding whether it was reasonable to do what they were doing because they didn't consider petitioners' rights. So on the... Did you ever argue before the AJ that 16 years was not enough time... I didn't hear the first part of your question. I'm sorry. Did you ever argue before the AJ that 16 years was not a reasonable period of time for any potential retaliatory motive or environment to dissipate? We argued that the Settlement Agreement was clear, that he had the right and it was still... You've got to answer my question. But it wasn't raised by the agency in their response, so the matter wasn't raised. My question is not that. My question is, did you raise the issue? Whether it was reasonable? Did you argue that it was unreasonable because the same conditions that led to the transfer to Ponce still existed in San Juan? Where did you argue that? In our response, we argued in our response... Do you have an appendix site that you could give us for that? Yes, I have it. I'm sorry, it's the reply. It starts in Appendix 128. That's where we argued that the conditions of this, and in the Petition of Foreign Enforcement itself, the main argument is that the Settlement Agreement was still in place and that it was clear and that the... No, no, but you've got to focus on... I'm asking a specific question. You have to focus on giving me a specific answer to the question. Yes. I thought I was asked there. Yes. Where is this? The reply to the Petition of Foreign Enforcement is at what page in that reply do you address the specific issue that Judge Dyke asked? I was trying to say that the reasonableness issue wasn't raised by the agency, whether it was reasonable for 16 years to comply, so it wasn't addressed specifically in the reply. The question is, in the reply, did you address the question of whether the reasons behind the transfer, that being a hostile environment for him in San Juan, whether that condition still existed or not? Did you mention that in this reply brief that we're looking at? No. Regarding the whistleblower activity, no. We raised the unreasonableness of the change in light of the fact that the conditions for him in Ponce were still in place and that the agency had never raised any issue as to whether the agreement could be reviewed or not. We did cite that in page 137 of the reply, but if the question was geared towards the whistleblower, it wasn't raised in the reply. You're saying the government never raised the issue of whether it was okay to go back to San Juan. It wasn't raised. No alternatives were discussed with the petitioner, nor in the response did the agency explain that it wasn't feasible for him for another accommodation for him in San Juan or in another area for him to maintain the settlement agreement. No accommodations were made or discussed and none were explained by the agency in their response. It's speculation that I assume that going back to San Juan might have been favorable to him had they offered that. Yeah, it's speculative, but that's why I meant that maybe that would be a better alternative than just keep him in Ponce and withdraw his travel time and compressed work schedule without any prior consideration of the agreement itself or the attendant circumstances regarding his rights in Ponce. In fact, the record shows that he requested a meeting with his supervisor and none was given. I think we're out of time. Thank you. Thank you. Thank those counsel. The case is submitted.